Matter of Weinstein (2023 NY Slip Op 06144)

Matter of Weinstein

2023 NY Slip Op 06144

Decided on November 29, 2023

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 29, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
ANGELA G. IANNACCI, JJ.

2021-07862

[*1]In the Matter of Israel D. Weinstein, admitted as Israel Dov Weinstein, an attorney and counselor-at-law. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, petitioner; Israel D. Weinstein, respondent. (Attorney Registration No. 5385711)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on January 13, 2016, under the name Israel Dov Weinstein.

Diana Maxfield Kearse, Brooklyn, NY (Susan Korenberg of counsel), for petitioner.
Frankfurt Kurnit Klein & Selz, PC, New York, NY (Tyler Maulsby and Richard Maltz of counsel) for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Second, Eleventh, and Thirteenth
Judicial Districts served the respondent with a notice of petition and a verified petition, both dated October 28, 2021. The verified petition contains four charges of professional misconduct. The respondent served and filed a verified answer dated December 8, 2021, admitting to some of the factual allegations as set forth in the charges, but denying the conclusions of law as to each charge. The Grievance Committee served and filed a statement of disputed and undisputed facts dated December 17, 2021, and requested the appointment of a Special Referee. The respondent served and filed a statement of disputed and undisputed facts dated January 6, 2022, wherein he denied that he engaged in a pattern and practice of misappropriating client funds, denied that he failed to maintain required bookkeeping records, and likewise requested the appointment of a Special Referee. By decision and order on application dated February 17, 2022, this Court referred the matter to the Honorable Charles J. Thomas, as Special Referee, to hear and report. A pre-hearing conference was held on April 6, 2022, and a hearing was conducted on June 23, 2022. In a report dated October 14, 2022, the Special Referee sustained all four charges in the verified petition. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent submits a memorandum of law in partial opposition to the Grievance Committee's motion, requesting that the Court disaffirm so much of the Special Referee's report as sustained charge four, and, as to the remaining charges, to impose a sanction of, at most, a public censure. In view of the admissions by the respondent and the evidence adduced at the hearing, we find that the Special Referee properly sustained all four charges. The Petition
The verified petition contains four charges of escrow-related misconduct. The respondent maintained an attorney escrow account at JP Morgan Chase Bank, titled "Law Office of [*2]Israel D. Weinstein, P.C. Attorney Trust Account IOLA" (hereinafter the escrow account). At all times relevant to the petition, the respondent represented The Federal Savings Bank (hereinafter TFSB). Charges one through three of the verified petition allege misappropriation, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Charge one alleges that the respondent engaged in a pattern and practice of misappropriating funds entrusted to him as a fiduciary, incident to his practice of law. On May 29, 2018, two deposits were made into the escrow account from TFSB, totaling $1,122,000, for a transaction known as the Dasrao transaction. After several disbursements, between June 15, 2018, and October 25, 2018, the respondent was required to maintain at least $561,000 in the escrow account for the Dasrao transaction. However, by September 11, 2018, the balance in the escrow account had been depleted to $405,339.51, which was $155,660.49 below the amount that the respondent was required to maintain for the Dasrao transaction.
On September 14, 2018, and October 2, 2018, two deposits of $388,500 each were made into the escrow account from TFSB for a transaction known as the Sam transaction. After several disbursements, between October 10, 2018, and December 19, 2018, the respondent was required to maintain at least $388,500 in the escrow account for the Sam transaction. However, by November 2, 2018, the balance in the escrow account had been depleted to $8,541.69, which represented a shortfall of $379,958.31.
On October 30, 2018, a deposit was made into the escrow account from TFSB in the amount of $574,404 for a transaction known as the Ramen transaction. After several disbursements, on November 2, 2018, the respondent was required to maintain at least $49,232.74 in the escrow account on behalf of the Ramen transaction. However, by November 2, 2018, the balance in the escrow account had been depleted to $8,541.69, which was $40,691.05 below the amount that the respondent was required to maintain for the Ramen transaction.
Also on October 30, 2018, a deposit was made into the escrow account from TFSB in the amount of $883,698 for a transaction known as the Ramjattan transaction. Several disbursements were thereafter made from the escrow account for this transaction. On December 27, 2018, a deposit was made into the escrow account from TFSB in the amount of $854,242 for a transaction known as the Goberdhan transaction. On December 27, 2018, the respondent was required to maintain at least $1,122,570.79 in the escrow account on behalf of the Ramjattan and Goberdhan transactions. However, by December 27, 2018, the balance in the escrow account had been depleted to $1,025,928.44, which was $96,642.35 below the amount that the respondent was required to maintain for the Ramjattan and Goberdhan transactions.
Charge two alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in that he disbursed funds from the escrow account without corresponding deposits. Specifically, on September 4, 2018, a check payable to Kouroush Medina, in the amount of $300,000, cleared the escrow account when there were no corresponding funds on deposit in the escrow account. Therefore, the check payable to Medina for $300,000 cleared against other clients' funds being held in the escrow account.
Likewise, on December 28, 2018, a check payable to "NLA," in the amount of $1,000,000, cleared the escrow account when there were no corresponding funds in the escrow account. The $1,000,000 check therefore cleared against other clients' funds being held in the escrow account.
Charge three alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law. On October 16, 2019, $500,000 was transferred from the escrow account to an account entitled "Wisnicki & Associates, LLC." This transfer cleared against other clients' funds in the escrow account.
Charge four alleges that the respondent failed to maintain required bookkeeping records for the escrow account, in violation of rule 1.15(d) of the Rules of Professional Conduct. The respondent failed to maintain an accurate ledger or similar record for the escrow account showing the source of all funds deposited therein; the names of all persons for whom the funds were held; the amount of such funds; the description and amounts; and the names of all persons to whom such funds were disbursed.
The Hearing Evidence
The respondent testified that after he had been in practice for approximately two years, he was approached by a childhood friend, Mark Neuhauser, about a business venture. Neuhauser introduced the respondent to Robert Wisnicki who, like Neuhauser, was an established [*3]lawyer in the respondent's community, with a successful real estate business. Wisnicki has since resigned and was disbarred by this Court (see Matter of Wisnicki, 212 AD3d 14).
Wisnicki and Neuhauser proposed an arrangement whereby they served as of counsel to the respondent's firm, to represent TFSB in real estate closings. Neuhauser and Wisnicki, who had prior dealings with TFSB, were on a list of attorneys who were not approved by TFSB to transact with it, although the respondent claimed that he was unaware of such status at the time. The respondent accepted this arrangement, and the respondent, Wisnicki, and Neuhauser opened the escrow account in furtherance of their venture. All three attorneys were signatories on the escrow account. Notwithstanding his signatory capacity, the respondent never attended closings and did not write checks from the escrow account. Instead, the respondent testified that his role was to ensure that the escrow account was open and to flag any issues in the account. When the respondent agreed to this venture, he understood that Neuhauser and Wisnicki had enlisted the help of his firm because they were on a list of attorneys who were not approved to transact business with Wells Fargo Bank.
The respondent testified that he was paid approximately $100 per closing completed
by Neuhauser and Wisnicki, and that he was not paid from the escrow account. However, the record contains evidence of numerous checks written to the respondent from the escrow account, listing various client names in the memo section and often for a standard amount ($1,195). The respondent testified that he did not endorse or negotiate these checks, and suggested that they were endorsed and transacted by Neuhauser or Wisnicki, for their benefit.
The respondent testified that a bookkeeper, who was hired by Wisnicki's firm, prepared ledgers for the escrow account, and that the respondent had no direct contact with the bookkeeper, leaving the interaction with the bookkeeper to Wisnicki. The respondent did not have access to the accounting software for the escrow account, and received all of his information regarding the account from Wisnicki. The respondent and Wisnicki met approximately every three months to conduct a general review of the ledger, and the respondent relied on Wisnicki's interpretations of the figures and assurances that "everything was okay."
By the respondent's own admission, some of the escrow account records were not accurate, and contained missing or contradictory information which the respondent could not fully explain. One ledger produced by the respondent bore the title of Wisnicki's firm, although the respondent claimed that the record related to the respondent's firm. The financial records presented at the hearing also reflect at least seven large unexplained checks written to Wisnicki or his firm ranging from more than $100,000 to more than $700,000; what appear to be at least two large and unexplained deposits from Wisnicki & Associates, LLC into the escrow account; and several large deposits into the escrow account from the respondent, ranging from approximately $700 to more than $400,000. The record also reflects at least three dishonored checks from the escrow account in the latter part of 2018, in addition to the withdrawal of $1,000,000 by Wisnicki, for which there were no corresponding funds in the escrow account. The respondent testified that this $1,000,000 check regarded a matter that was unrelated to the respondent's firm, that Wisnicki told the respondent that he had used the incorrect checkbook, and that Wisnicki subsequently transferred the funds back to the escrow account.
The respondent's testimony regarding any outstanding funds due to TFSB based on his misappropriations only added to the lack of clarity created by the various deficiencies of his testimony and financial records. The respondent stated, on the one hand, that TFSB had been made whole, that all funds were accounted for, and that TFSB never complained of any shortfalls, and, on the other hand, that there is approximately $70,000 that the respondent cannot account for without Wisnicki's and Neuhauser's cooperation, which they have apparently refused. Likewise, with regard to charge three, and $500,000 that was withdrawn from the escrow account, the respondent could offer little information beyond that the transfer was also initiated by Wisnicki in error, but the respondent could not account for the client funds that were misappropriated when this withdrawal was made, or the purpose of the transaction. The respondent did not possess any independent knowledge of this transaction as he had not reviewed the related records himself, but relied only on information from Wisnicki. While the respondent testified that he had begged Wisnicki and Neuhauser to hire an outside accounting firm to reconcile the escrow account, the respondent did not hire an accountant for this purpose, although his firm was the holder of the escrow account and the escrow account bore his firm's name.
The respondent testified that he currently reconciles the escrow account regularly and personally keeps a running balance of the overall account. The Special Referee found that the respondent had acknowledged his conduct and is fully remorseful.
[*4]Findings and Conclusion
In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained all four charges. The respondent contends in his papers in partial opposition to the Grievance Committee's motion to confirm the Special Referee's report that charge four should not be sustained because, in essence, his bookkeeping records were sufficient. We find this argument to be without merit as the respondent admitted that the escrow account records were inaccurate and they did not contain all the necessary information as required by rule 1.15(d) of the Rules of Professional Conduct, such that the respondent was unable to explain several transactions in the escrow account. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted.
In determining an appropriate measure of discipline, we have considered in mitigation, inter alia, the respondent's unblemished disciplinary record, evidence of his good character, and his remedial measures. In aggravation, we have considered that the respondent permitted Wisnicki and Neuhauser to use the escrow account to access bank clients with whom they were not approved to transact business. We have further considered that the respondent, knowing that Wisnicki and Neuhauser were not approved by at least one bank, rather than exercising heightened care and oversight based on this knowledge, abdicated his fiduciary responsibilities to his clients by failing to conduct any independent reconciliation of the escrow account or to monitor the escrow account in any meaningful way to review the transactions occurring therein. The respondent thereby allowed significant and repeated misappropriation of client funds and cannot claim innocence based on his purported failure to adequately monitor the escrow account. Furthermore, the respondent's involvement with the escrow account is itself in question, given the large and unexplained deposits from the respondent into the escrow account, according to his own ledger.
Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of five years.
LASALLE, P.J., DILLON, DUFFY, BARROS and IANNACCI, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the report of the Special Referee is granted; and it is further,
ORDERED that the respondent, Israel D. Weinstein, admitted as Israel Dov Weinstein, is suspended from the practice of law for a period of five years, commencing December 29, 2023, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than June 29, 2028. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Israel D. Weinstein, admitted as Israel Dov Weinstein, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Israel D. Weinstein, admitted as Israel Dov Weinsten, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Acting Clerk of the Court